Jen-Feng Lee, SBN 204328
jflee@ltpacificlaw.com
Kenneth K. Tanji, Jr., SBN 162273
ktanji@ltpacificlaw.com
**LT P**ACIFIC **L**AW **G**ROUP**, LLP**
17800 Castleton Street, #560
City of Industry, CA 91748
T: 626-810-7200
F: 626-810-7300

Robert E. Aycock (Admitted *pro hac vice*)
robert@kimballanderson.com
William B. Chadwick (Admitted *pro hac vice*)
will@kimballanderson.com
**K**IMBALL **A**NDERSON
649 E. South Temple, 2nd Floor
Salt Lake City, UT 84102
T: 801-359-3333
F: 801-326-4526

Attorneys for Defendants
XIAMEN JXD ELECTRONIC COMMERCE CO. LTD.,
XIAMEN SUNNYPET PRODUCTS CO. LTD., and
PETSFIT INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| YUNTEK INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> XIAMEN JXD ELECTRONIC COMMERCE CO., LTD., XIAMEN SUNNYPET PRODUCTS CO., LTD., and PETSFIT INC., <br><br> Defendants. | Case No. 4:20-cv-07201-JSW <br><br> **DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF** <br><br> Judge: Hon. Jeffrey S. White <br><br> Hearing Date: October 7, 2021 <br> Hearing Time: 2:00 p.m. <br> Courtroom: No. 5, 2nd Floor |

Pursuant to P.L.R. 4-5(b), Defendants Xiamen JXD Electronic Commerce Co, Ltd., Xiamen Sunnypet Products Co., Ltd., and Petsfit Inc. (collectively, "Sunnypet") file their Responsive Claim Construction Brief in response to the Opening Brief (Dkt. 59) filed by Plaintiff Yuntek International, Inc. ("Yuntek") regarding U.S. Patent No. 6,715,446, "Pet Tent" (the "'446 Patent," or the "Patent"). Yuntek has accused Sunnypet of infringing four independent claims of the '446 Patent (Claim 6, 7, 41, and 54) and 29 dependent claims (Claims 31-38, 40, 42-51, 53, 55-61, and 64-65).[1]

## I.   INTRODUCTION

After an *ex parte* reexamination and an *inter partes* reexamination, the '446 Patent's claims have been amended multiple times and now, each independent claim includes a hodgepodge of limitations. Even so, the '446 Patent teaches a long-known technology using plain words that a person with ordinary skill in the art would have readily understood.

Of the six terms presented, three do not need to be construed. For the others, Sunnypet offers constructions supported by intrinsic and extrinsic evidence. Yuntek, on the other hand, has proposed constructions designed to manufacture an infringement position and avoid invalidating prior art. Yuntek inserts undefined terms or improperly squeezes unsupported limitations into its proposed constructions. These positions violate established Federal Circuit precedent and confuse the issues. Adopting them would not help the parties, the Court, or a jury answer questions of infringement or invalidity.

## II.   PROCEDURAL BACKGROUND

On June 25, 2012, the parties exchanged Proposed Terms for Construction pursuant to Patent L.R. 4-1. Sunnypet initially identified nine potential terms for construction, while Yuntek identified one. As required by Patent L.R. 4-1(b), Sunnypet subsequently "limit[ed] the terms in dispute by narrowing or resolving differences." On July 9, 2021, the parties exchanged Preliminary Claim Constructions and supporting evidence pursuant to Patent L.R. 4-2. Sunnypet seeks construction on

---

[1] Exhibit A to this brief includes the abstract, specification, figures, and originally issued claims of the '446 Patent. All references to the specification and figures are to Exhibit A unless otherwise stated. Exhibit B is the *Inter Partes* Reexamination Certificates associated with the '446 Patent. This Reexamination Certificate, issued on August 28, 2012, contains the claims in their current form. All references in this brief to the claims are to Exhibit B unless otherwise stated.

three terms, and Yuntek now seeks construction for its original term and several additional phrases that it did not identify in its Patent L.R. 4-1 disclosures.

## III. LEGAL STANDARD

Like Yuntek, Sunnypet omits a statement of basic claim construction standards but provides authority supporting its specific arguments below.

## IV. ARGUMENT

### A. "foldable"

| Sunnypet's Proposed Construction | Yuntek's Proposed Construction |
|---|---|
| plain and ordinary meaning | having structural features that facilitate folding in the manner described |

"Foldable" is a common word and is used consistent with its standard understanding in the '446 Patent. As such, the Court should adopt the plain and ordinary meaning of this term. Generally, there is a "'heavy presumption' that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick, Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (quoting *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999)). The "ordinary and customary meaning of claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).

Yuntek has not offered any evidence that there is confusion as to what a person of ordinary skill in the art would have understood "foldable" to mean within the context of the '446 Patent. Foldable pet carriers have existed for decades. *See, e.g.,* U.S. Patent No. 2,538,778 (Application Date Oct. 30, 1945), attached hereto as Exhibit F. Yuntek concedes that "[t]he word 'foldable' is used in its ordinary sense in the '446 Patent." Opening Brief at 5. Still, Yuntek argues that the Court should shun the plain and ordinary meaning and adopt its construction which impermissibly adds limitations.

As Yuntek acknowledges, during one of the reexaminations of the Patent, the Examiner declared, "the word 'foldable' only requires an ability to be folded." Opening Brief at 6, citing Exhibit C at 20-21; *see also* Exhibit D at 11-14 (reaffirming this interpretation). Yuntek admits that "[t]he patentee did not challenge the Examiner's reasoning, instead amending the claims to replace

'foldable' with language requiring a particular 'folded configuration.'" Opening Brief at 6, quoting Exhibit E at 18. The patentee later reverted to "foldable," again without disputing that it refers to a capability. *Id.* The patentee's decision to not dispute the Examiner's position "is relevant to claim interpretation . . . ." *TorPharm Inc. v. Ranbaxy Pharms., Inc.*, 336 F.3d 1322, 1330 (Fed. Cir. 2003).

Despite acknowledging the patentee's position with the Patent Office, Yuntek still argues that the Court should avoid a straightforward interpretation of "foldable." Yuntek's sole reason is that "[w]ith enough pressure applied, almost anything is foldable." Opening Brief at 7. But Yuntek does not provide any evidence that a person of ordinary skill in the relevant art would interpret "foldable" to encompass the type of extraordinary pressure necessary to bend or fold certain materials, such as a stiff metal sheet. *See also* Exh. A at 1:63 ("The design is simple and usage is easy."). Moreover, the patentee did not make this argument during the prosecution, conceding that the Patent teaches a "foldable" housing. Yuntek has not presented a compelling reason to stray from the plain and ordinary meaning of this term.

Further, the "foldable" requirement is already modified and defined in each asserted claim. *See ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("[T]he context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms."). For example, Claim 7 requires that the "housing be foldable such that" the end panels can be disengaged, the main body is collapsed, and the end panels are folded back over the collapsed main body. Exh. B at 1:58-2:22. The patentee expressly acknowledged that it amended the claim "such that, instead of merely specifying that the housing is foldable, it requires that the housing folds in a specific configuration." Exh. E at 17-18. In other words, "foldable" has already been limited by the claim itself, and it would be improper to rewrite it to incorporate additional limitations. *See Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997), *amended on reh'g*, 131 F.3d 1009 (Fed. Cir. 1997) ("[T]he language of the claim frames and ultimately resolves all issues of claim interpretation.").

Fundamentally, "foldable" describes a physical attribute of the carrier. Yuntek's proposed construction transforms the word to require specific "structural features." This is an inappropriate deviation from the claim term and focuses more on the existence of undefined features rather than on

1  the claimed capabilities of the carrier. Figure 4 of the Patent "illustrates the housing being collapsed
2  for storage" but does not identify any specific structural features. *See* Exh. A at 2:4; Exh. A at Fig. 4.
3  Instead, the Figure (shown below) shows the required folding capability and steps as outlined in the
4  claims:

*Id.*

Yuntek unnecessarily departs from the plain claim language to convert "foldable" into "facilitate folding." This change would introduce ambiguity and leave Sunnypet, the Court, and the jury to speculate as to whether a "structural element facilitates folding" as opposed to simply whether a carrier is "foldable." Yuntek's attempt to expand the meaning of the "foldable" term to encompass vague "structural features" that somehow "facilitate folding" without adequate support in the specification violates the written description requirement of 35 U.S.C. § 112. On the other hand, the plain and ordinary reading of "foldable" provides a consistent definition of the word and offers public notice regarding the scope of the claims and what constitutes infringement.

Yuntek has not provided any reason to complicate the meaning of this simple word. Consequently, Sunnypet respectfully requests that the court construe "foldable" to have its plain and ordinary meaning and to reject Yuntek's proposed construction.

B.     "on top of said bottom side [of said main body]"

| Sunnypet's Proposed Construction | Yuntek's Proposed Construction |
| --- | --- |
| onto the interior floor of the housing, and on top of any mat or pad on the interior floor of the housing | above and directly adjacent to the bottom side of the main body |

Every asserted independent claim requires that the main body of the claimed pet housing be collapsible such that the first, second, and top sides of the main body collapse "on top of said bottom side" or "on top of said bottom side of said main body." Exhibit B at 1:43-44, 2:17-18, 3:65-67, 5:3-5. Some dependent claims further require "a pad placed in the interior on the bottom side." Exh. B at 3:32-34 (Claim 40 as a dependent of Claim 7); *see also* Exh. B at 4:37-39 (Claim 53's requirements as a dependent of Claim 41); and Exh. B at 6:29-31 (Claim 64's requirements as a dependent of Claim 54 requiring that the pad "cover[] the bottom side of the said main body.").

When determining how to construe this term, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." *Phillips*, 415 F.3d at 1314. In light of the dependent claim's requirements that the housing further comprise a pad placed on the bottom side, the term "on top of said bottom side" should be construed broadly to include the pad, if used. *See Baxalta Inc. v. Genentech,* 972 F.3d 1341, 1346 (Fed. Cir. 2020) ("The plain language of these dependent claims weighs heavily in favor of adopting Baxalta's broader claim construction [for the independent claims.").

As written, the claims themselves require that the pad be inside the housing when it is folded. The claims themselves require that the pad be "in the interior" (Exh. B. at 3:32-34, Claim 40), "inside the main body" (Exh B at 4:37-39, Claim 53), or "inside the housing" (Exh. B at 6:29-31, Claim 64). Indeed, the only times a pad is referenced in the '446 Patent, it is within the carrier. These dependent claims inherit the elements of their respective independent claims, meaning the housing—which has a pad inside—must still fold in the claimed manner. If the pad were removed from the bottom side during the folding, the folded housing would lack the essential pad of the dependent claim.

The Patent's specification is consistent with this interpretation. The specification explains that the carrier "can be folded down and stored away in a <u>self-contained storage bag</u>." Exh. A at 1:33-35

(emphasis added). "The configuration of the folded tent is such that the folded tent functions as its own <u>built-in storage bag</u> making storage of the pet tent convenient." Exh. A at 4:2-4 (emphasis added); *see also id.* at 1:19-20, 1:61-63, 3:65-4:2. These statements explain that any optional components, such as a pad, should stay within the folded unit when stored. If the claimed pad must be removed and stored separately to collapse and fold the carrier, the carrier would not be a "convenient" "self-contained storage bag" as described by the patentee.

In an attempt to differentiate the invention from prior art, the patentee similarly argued to the Examiner that the Patent requires that claimed features remain inside the carrier during folding. *See* Exh. E at 24 ("[I]f the frame of Halpin is removed before collapsing the outer container and folding the closure members, Haplin does not satisfy the limitation that 'the front panel and back panel are folded over the collapsed main body" because the internal components would be folded and stored separately from the carrier).

Yuntek argues that "bottom side" in these claims cannot be interpreted to also include the pad because if the carrier collapses on the pad it would not touch the floor of the main body. Opening Brief at 10. Rather than limit "bottom side" to only mean the interior floor of the main body, the plain language of the dependent claims "weighs heavily in favor of adopting" a broader construction of the "on top of the bottom side" language to also include the required pad. *Baxalta Inc.*, 972 F.3d at 1346. Moreover, if the end panels cannot fold over the pad or do not stay "significantly compact" and relatively flat (*see* § III.D herein) under Yuntek's construction, the claims should likewise be construed to cover their dependent requirements. *See id.*

Yuntek relies heavily on the Examiner's analysis in response to a request for *Inter Partes* Reexamination of the '446 Patent to support its argument that nothing can lie between the collapsed main body and the bottom side. In response to the IPR, the Examiner concluded that the Halpin prior art differed from the '446 Patent because it taught leaving a bulky internal frame between the collapsed carrier and the bottom side. But leaving a pad in the bottom side of the body is much different than leaving the internal skeleton disclosed in Halpin.

To begin, the '446 Patent specifically requires the carrier to accommodate a pad. *See* Exh. B at 3:32-34 (Claim 40); 4:37-39 (Claim 53); and 6:29-31 (Claim 64). By contrast, the Patent does not

contemplate a removable frame like that disclosed in Halpin. *See* Exhibit F. While an unclaimed frame that impedes a full collapse might fall outside of the claim scope, the '446 Patent explicitly teaches a pad that rests between the collapsed main body and bottom side of the carrier.

Next, the pad required by the Patent is much different than the frame required by Halpin. The pad is specifically required to sit on or cover the bottom side. *See* Exh. A at 3:50-52; Exh. B at 3:32-34, 4:37-39, and 6:29-31. It does not make a difference whether the main body collapses onto the bottom side or a pad covering the bottom side. In both instances, the main body must fall, and the end panels must fold over into a compact state. Halpin's internal frame is significantly different. The Halpin frame is a complex, rigid set of membranes as shown in Figure 3 of the Halpin patent below:



Exh. F at Fig. 3; *see also id.* at 3:39-4:28; 5:22-52. That frame is not intended to be situated on the bottom side when the carrier is in use. As such, collapsing the main body without removing the internal frame modifies the collapsing and folding process and prevents the carrier from folding into a compact configuration for storage.[2]

The asserted independent claims of the '446 Patent must be interpreted broadly enough to encompass the requirements of their dependent claims. *See Baxalta Inc.*, 972 F.3d at 1346. Because some dependent claims require the use of a pad and because the patentee described the folded carrier as a "convenient," "significantly compact," "self-contained storage bag," the pad would need to remain inside the bag during the folding. Exh. A at 1:33-35, 4:2-4. For these reasons, the Court should

---

[2] If the Court accepts Yuntek's position that anything interposed between the collapsed main body and the bottom side is outside the scope of the claim, there would be multiple no- or low-cost non-infringing alternatives.

construe "on top of said bottom side [of said main body] to mean "onto the interior floor of the housing, and on top of any mat or pad on the interior floor of the housing," and reject Yuntek's proposed construction.

C.    **"support said first, second, and top sides of the main body"**

| Sunnypet's Proposed Construction | Yuntek's Proposed Construction |
|---|---|
| add stability to the first, second, and top sides of the main body | hold the first, second, and top sides of the main body in a fully upright and expanded position |

"Inventors are masters of their claims, and the words they use to describe and claim their invention are decisive and binding." *Bio-Rad Labs., Inc. v. International Trade Commission*, 998 F.3d 1320, 1331 (Fed. Cir. 2021). Here, the inventor and patentee chose only to specify that an engaged front and back panel "support" the first, second, and top sides of the main body. *See* Exh. A at 3:60-62 (Claim 41) and 4:66-67 (Claim 54). The definition of "support" is commonly understood to mean "carry all or part of the weight of" and "keep from falling or sinking or failing." Exhibit G (*The Oxford Am. Desk Dict.*, p. 602). Yuntek's proposed construction goes beyond this widely accepted definition and should not be accepted.

Nothing in the Patent indicates that the end panels are "the sole product feature that prevents the main body from collapsing," as Yuntek argues. Opening Brief at 10. The Patent plainly states that "[t]he zippers can function to provide structure to the soft sides of the tent," and not the panels themselves. Exh. A at 2:24-32 (emphasis added). This directly contradicts Yuntek's allegations that "the end panels alone cause the main body to achieve its 'fully upright and expanded position'" and "the end panels must be capable of fully supporting the top and sides of the main body." Opening Brief at 11; 12 n.6.

The main body also plays an essential role in maintaining the shape and structure of the carrier. Without the engageable edge of the main body, the end panels would be unable to attach to the main body and provide support. In this way, the main body, the zipper, and the end panels function together to help hold up the carrier. Yuntek admits that "the '446 Patent does not preclude the presence of other supporting elements." Opening Brief at 12, n.6.

While engaging the end panels to the main body (such as by a zipper) increases the structural integrity of the pet carrier, the Patent does not support the contention that disengaging the end panels "<u>causes</u> the pet housing to collapse and fold" or that the housing would then automatically collapse. Opening Brief at 11 (emphasis added). Rather, disengaging the end panels merely <u>allows</u> the housing to collapse. *See* Exh. A at 3:65-4:2 ("As shown in FIG.4, when not in use, the zippers which connect the front panel and back panel to the main body are each unzipped. The front panel and back panel <u>can</u> then collapse into a folded down position toward the main body for storage.") (emphasis added).

Yuntek alleges that the Chinese Patent application to which the '446 Patent claims priority discloses that unzipping the end panel automatically causes the carrier to sag. However, this explanation and requirement are not included in the '446 Patent, further indicating that the patentee did not intend for this to be a claim requirement.

Yuntek's construction extends the meaning of "support" beyond the bounds set by the Patent claims, intrinsic evidence, and extrinsic evidence. Yuntek argues that the end panels do more than merely help the carrier from collapsing—Yuntek suggests that the "support" should instead mean stretching the carrier to its "fully upright and expanded position." That function goes beyond "supporting" the carrier and instead holds the end panels solely responsible for the shape and expansion of the carrier.

For the reasons stated above, the Court should construe "support said first, second, and top sides of the main body," to mean "add stability to the first, second, and top sides of the main body," and reject Yuntek's proposed construction of that phrase.

### D. "Front panel and back panel are <u>folded over</u> the collapsed main body with one of the front panel and the back panel <u>folded over</u> the other"

| **Sunnypet's Proposed Construction** | **Yuntek's Proposed Construction** |
|---|---|
| front panel and back panel folded toward and over each other and over the top side of the collapsed main body such that the housing is folded to and remains in a significantly compact state | "folded over" means bent or pivoted to a position above the collapsed main body and at least partly overlapping the other panel |

The '446 Patent focuses on the ability to collapse the claimed carrier into a convenient and compact storage bag. To this end, each of the asserted independent claims requires that the end panels of the carrier be "folded over" the collapsed main body, with the panels themselves having some overlap. Exh. B at 1:45-47 (Claim 6); 2:19-21 (Claim 7); 3:67-4:3 (Claim 41); and 5:6-9 (Claim 54).

By itself, "folded over" is vague as to the degree to which the end panels must be bent. Fortunately, the Patent's specification clarifies this term. The Patent explains that once the end panels are folded, the carrier "can be folded down and stored away in a self-contained storage bag." Exh. A at 1:33-35. The specification also states "[t]he configuration of the folded tent is such that the folded tent functions as its own built-in storage bag making storage of the pet tent convenient." Exh. A at 4:2-4; *see also id.* at 1:19-20, 1:61-63, 3:65-4:2. Yuntek has likewise described the '446 Patent as being "'collapsible' and 'foldable' in a particular way <u>to facilitate storage</u>." Opening Brief at 1 (emphasis added). The specification provides context that "folded over" does not encompass the entire spectrum of folding (*i.e.*, leaning; slightly bent, tilted or angled; etc.) but instead, means compact folding. Without this explanation, the claims themselves are unclear as to how far the panels must be folded to qualify as "folded over," or whether the folded panels must remain in their folded state. *See Phillips*, 415 F.3d at 1313 ("The person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."). Ignoring these statements, Yuntek proposes a construction that replaces the undefined range of "folded over" with similarly vague terms like "bent" or "pivoted." This position concedes that the claim is not clear enough on its own, but does little to clarify the term and disregards the context of the rest of the Patent.

The Patent also repeatedly refers to the claimed invention as "collapsible," further indicating that the housing becomes compact or folds flat. For example, the preamble of every independent claim refers to the invention as "collapsible housing." Exh. B at 1:26-28 (Claim 6); 1:58-60 (Claim 7); 3:35-36 (Claim 41); and 4:40-41 (Claim 54). Each asserted independent claim requires a front opening that allows access to the "collapsible housing." Exh. B at 1:48-50 (Claim 6); 2:1-3 (Claim 7); 3:45-46 (Claim 41); and 4:50-51 (Claim 54). The patent explains that Figure 4 "illustrates the housing being collapsed for storage." Exh. A at 2:4.

The patentee's responses to the Patent Office during examination solidify this interpretation. In response to an Office Action, the patentee argued that its application was "inherently designed to be foldable to a <u>significantly compact state</u>" in a way that was not disclosed by the Peeples prior art. *See* Exh. H at 6 (emphasis added). To differentiate from the Burns prior art, the patentee argued that its invention was a "structure designed to further allow more <u>compact folding</u>." *Id.* at 6-7 (emphasis added). The patentee further explained that to complete the collapsing and folding of the carrier, "the front panel and the back panel are folded over the collapsed main body to provide a folded pet housing in a <u>compact form</u>." *Id.* at 7 (emphasis added). The Court should interpret the claims in light of those arguments. *See Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers."); *Phillips*, 415 F.3d at 1317 ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the court of prosecution, making the claim scope narrower than it would otherwise be.")

Requiring that the folding maintain this "compact state" does not import a new limitation; rather, it holds the claim term to the meaning that the patentee set for "folded over" throughout the specification and prosecution history. If the folded panels do not lie flat over the "collapsed main body" or spring open, the folded housing is not "significantly compact" and is not a "convenient" or "self-contained storage bag." Exh. A at 1:33-35, 4:2-4.

Sunnypet's proposed construction explains that the end panels must be folded "toward and over each other" to clarify that the front and back panels must both be pivoted over the same side of the collapsed main body. This construction removes the interpretation that an end panel folded above the collapsed main body and an end panel folded below could qualify as being "folded over" the main body or each other. Yuntek agrees that this term should be construed but its proposed construction reinforces the vague nature of this term. Yuntek disregards the context from the specification and arguments the patentee made to the Examiner that would clear up these ambiguities.

For the reasons stated above, the Court should construe "front panel and back panel are <u>folded over</u> the collapsed main body with one of the front panel and the back panel <u>folded over</u> the other" to mean "front panel and back panel folded toward and over each other and over the top side of the collapsed main body such that the housing is folded to and remains in a significantly compact state," and reject Yuntek's proposed construction.

### E.   "a continuous structure"

| Sunnypet's Proposed Construction | Yuntek's Proposed Construction |
|---|---|
| plain and ordinary meaning | a structure in which the four sides are connected (such as by sewing) without being disengageable (such as by a zipper) across the structure's entire length at any location |

Yuntek has not overcome the "heavy presumption" that "a continuous structure" carries its ordinary and customary meaning. *CCS Fitness*, 288 F.3d at 1366 (Fed. Cir. 2002) (quoting *Johnson*, 175 F.3d at 989). A construction of this term will not aid the Court or the jury in determining infringement or invalidity, and Yuntek's proposed construction is particularly unhelpful.

Each asserted independent claim requires that the collapsible housing have "a bottom side, a first side, a second side, and a top side, said main body forming a <u>continuous structure</u>." Exh. B at 1:29-31 (Claim 6); 1:61-63 (Claim 7); 3:37-39 (Claim 41); and 4:42-44 (Claim 54). The Patent is clear that the "pet tent has a main body, front and back panel" (Exh. A at 1:36-37) and that the "bottom of the front and back panels are sewn together with the main body" (*id.* at 1:8-11). The Patent Figures, such as Fig. 1 (shown below), also display the main body as a "continuous structure."



*Id.* at Fig. 1. Redefining the term to require four distinct sides raises more questions than it answers, particularly in light of the domed embodiment shown in the figure above.

Yuntek's proposal needlessly complicates a simple phrase. The insertion of the phrase "four sides" creates a convoluted requirement with an unclear antecedent. Moreover, Yuntek improperly offers suggested embodiments within the claim. "The claims, not specification embodiments, define the scope of patent protection." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009). There is no explanation for why "connected" should be modified with "such as by sewing" or why "disengageable" should be clarified by "such as by a zipper." These potential embodiments appear to be an improper sharpening of the claims to fit the accused products or to avoid prior art. These additions could confuse or prejudice or a jury and should not be adopted.

Accordingly, Sunnypet requests that the Court construe "a continuous structure" to be given its plain and ordinary meaning and reject Yuntek's proposed construction.

**F.     "front opening"**

| Sunnypet's Proposed Construction | Yuntek's Proposed Construction |
|---|---|
| plain and ordinary meaning | an opening in the front panel; *i.e.*, a door within a door |

The term "front opening" appears in each asserted independent claim to describe a space through which an animal enters and exits the carrier. *See* Exh. B at 1:48-50 (Claim 6); 2:1-3 (Claim 7); 3:45-46 (Claim 41); and 4:50-51 (Claim 54). That plain language is easily understood and there is no reason for the Court to construe the term.

Yuntek concedes that the meaning of this term "can be seen clearly" and is "crystal clear." Opening Brief at 18. In these instances, a plain and ordinary meaning is appropriate. "A court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms." *Johnson*, 175 F.3d at 989.

Even if the Court looked beyond its preference for the plain and ordinary meaning, Yuntek's proposal is unworkable. Yuntek requests a construction that the front opening is a "door within a door," <u>meaning that the front panel is itself a door</u>. However, Yuntek similarly argues that opening the front panel like a door would "interfer[e] with the pet housing's structural integrity." Opening

Brief at 17-18. The Court should not adopt Yuntek's inconsistent positions, especially when the plain language of the terms in question is easily understood.

Yuntek's proposed construction confuses the issues. Notably, Yuntek's proposal relies on the word "door," a new and undefined term not used anywhere in the patent claims or specification. The use of "door" presumably implies the use of an inflexible covering that pivots along hinges, secures with a latch, and has a handle or knob. Or maybe Yuntek intends for "door" to mean a sliding or revolving barrier. Obviously, those are not requirements in the '446 Patent's claims. <u>At its core, a "door" is the opposite of an "opening,"</u> and replacing "front opening" with "door within a door" does more harm than good. This uncertainty presumably factored into the patentee's decision to eschew the "door within a door" language in favor of the "front opening" term in its multiple revisions of the patent claims.

For these reasons, Sunnypet requests that the Court construe "front opening" to be given its plain and ordinary meaning and reject Yuntek's proposed construction.

## V.  CONCLUSION

For the reasons discussed herein, Sunnypet respectfully requests that the Court adopt its proposed claim constructions and reject Yuntek's proposed constructions.

Dated: September 2, 2021

KIMBALL ANDERSON

/s/ Robert E. Aycock
Robert E. Aycock
William B. Chadwick

LT PACIFIC LAW GROUP, LLP
Jen-Feng Lee

Attorneys for Defendants XIAMEN JXD ELECTRONIC COMMERCE CO., LTD., XIAMEN SUNNYPET PRODUCTS CO., LTD., and PETSFIT INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2021, the preceding **DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF** was filed with the Clerk of the Court using CM/ECF, which will send notification of the filing to all attorneys of record in this case.

<u>*s/ Robert E. Aycock*</u>
Robert E. Aycock