1
2
3
4       UNITED STATES DISTRICT COURT

5       NORTHERN DISTRICT OF CALIFORNIA

6       EUREKA DIVISION

7

8    YUNTEK INTERNATIONAL, INC.,          Case No.  20-cv-07201-JSW (RMI)

9              Plaintiff,
                                          **ORDER RE: CROSS-MOTIONS TO**
10          v.                            **AMEND INFRINGEMENT AND**
                                          **INVALIDITY CONTENTIONS**
11   XIAMEN JXD ELECTRONIC
     COMMERCE CO., LTD., *et al.*,        Re: Dkt. Nos. 56, 58
12
              Defendants.
13

14          Now pending before the court are a pair of motions wherein the Parties seek to amend their

15   contentions. On August 19, 2021, Plaintiff and Defendants simultaneously moved to amend their

16   respective infringement (dkt. 56) and invalidity (dkt. 58) contentions. Both motions are fully

17   briefed and ripe for decision, and pursuant to Civil Local R. 7-1(b), the undersigned finds that

18   these matters are suitable for disposition without oral argument. For the reasons that follow, both

19   motions are denied.

20                                        **BACKGROUND**

21          This is a patent infringement case brought by Plaintiff Yuntek – a California-based

22   designer and developer of containers and carriers for the housing and transportation of household

23   pets. *See* SAC (dkt. 52) at 4. In April of 2001, Yuntek was issued a patent (hereafter, "the '446

24   Patent") which "discloses and claims a novel pet carrier that is collapsible, foldable into a compact

25   shape, and lightweight, yet forms a sturdy structure when assembled and is also comfortable for a

26   pet." *Id*. Defendants are a two Chinese companies (Xiamen JXD Electronic Commerce Co. and

27   Xiamen Sunnypet Electronic Commerce Co.) based in Xiamen City, Fujian Province; and a

28   Delaware Corporation (Petsfit Inc.) based in Ontario, California. *Id*. at 2. The three Defendants

1    import various pet home products into the United States with Petsfit handling the logistical

2    operations for the importation and sale of the accused products in the United States. *Id*. at 4. In

3    January of 2020, Xiamen Sunnypet, the parent company of Xiamen XJD, was issued a patent ("the

4    '945 Patent") for a pet carrier product. *Id*.

5         In the operative complaint, Yuntek alleges that Defendants sell one or more products that

6    infringe on Plaintiff's '446 patent, one example of which is identified as Sunnypet's Model No.

7    DCC1039B1C, sold under the following description: "Petsfit Soft Portable Dog Crate / Cat Crate /

8    Foldable Pet Kennel / Indoor Outdoor Pet Home," which is offered for sale in multiple sizes. *Id*. at

9    4-5. Another example is identified as Sunnypet's Model No. DCC1047C, sold under the following

10   description, "Petsfit Sturdy Wire Frame Soft Pet Crate, Collapsible for Travel," which is also

11   offered in multiple sizes. *Id*. at 5. In addition to identifying these examples, the operative

12   complaint states that "Yuntek has identified other infringing products in its Disclosure of Asserted

13   Claims and Infringement Contentions . . . [and that it] expects to identify additional infringing

14   Sunnypet products through discovery in this action." *Id*. Plaintiff claims that Defendants have

15   been on notice regarding the allegations that certain Sunnypet products have infringed the '446

16   Patent since January 2015, at which time Defendants reportedly extended an initial commitment to

17   change their design so as to "design around the '446 Patent," allegedly followed by a subsequent

18   commitment by Sunnypet's U.S. distributor to stop selling the infringing products in the United

19   States, "thus seeming to bring the infringing conduct to an end." *Id*. at 5-6. "In 2018, [] Yuntek

20   [allegedly] learned that Sunnypet was selling the Accused Products in the U.S. under its own name

21   . . . [however] Sunnypet continues to sell the Accused Products today." *Id*. at 6. In short,

22   Plaintiff's SAC pleads a single count of willful patent infringement (both direct and indirect)

23   regarding "one or more claims of the '446 Patent, including, but not limited to, claim 6 . . ." *Id*. at

24   6-7.

25                                    **LEGAL STANDARD**

26        This Court's Local Patent Rules require parties to identify their respective infringement

27   and invalidity theories early in the litigation. *See* Patent L.R. 3-1, 3-3. Once served, the

28   infringement and invalidity contentions frame the parties' respective theories, and those

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1   contentions may be amended only by order of the court and upon a timely showing of good cause.

2   *See* Patent L.R. 3-6. By way of illustration, Rule 3-6 provides "[n]on-exhaustive examples of

3   circumstances that may, absent undue prejudice to the non-moving party, support a finding of

4   good cause [such as] [the] recent discovery of material, prior art despite earlier diligent search; and

5   [r]ecent discovery of nonpublic information about the Accused Instrumentality which was not

6   discovered, despite diligent efforts, before the service of the Infringement Contentions." *Id*. at

7   Rule 3-6 (b) & (c). Thus, "[t]he local patent rules in the Northern District of California . . .

8   requir[e] both the plaintiff and the defendant in patent cases to provide early notice of their

9   infringement and invalidity contentions, and to proceed with diligence in amending those

10  contentions when new information comes to light in the course of discovery . . . [thus] [t]he rules

11  [] seek to balance the right to develop new information in discovery with the need for certainty as

12  to the legal theories." *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI,

13  2019 U.S. Dist. LEXIS 32411, at *4 (N.D. Cal. Feb. 28, 2019) (quoting *O2 Micro Int'l Ltd. v.*

14  *Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006)); *see also Finjan, Inc. v.*

15  *Symantec Corp.*, No. 14-cv-02998-HSG (JSC), 2018 U.S. Dist. LEXIS 14953, at *5-6 (N.D. Cal.

16  Jan. 29, 2018).

17      Given that "[t]he moving party has the burden of demonstrating good cause," it is

18  important to note that, for present purposes, "good cause" has been defined as requiring a showing

19  that the moving party acted diligently, coupled with a showing that the opposing party will not be

20  prejudiced. *MLC Intellectual Prop.*, 2019 U.S. Dist. LEXIS 32411, at *5 (quoting *Karl Storz*

21  *Endoscopy-Am. v. Stryker Corp.*, No. 14-0876-RS (JSC), 2016 U.S. Dist. LEXIS 176876, at *7

22  (N.D. Cal. Dec. 21, 2016); and, citing *O2 Micro*, 467 F.3d at 1355; *Radware Ltd. v. F5 Networks,*

23  *Inc.*, No. 13-02021-RMW, 2014 U.S. Dist. LEXIS 103215, 2014 WL 3728482, at *1 (N.D. Cal.

24  July 28, 2014) ("The burden is on the movant to establish diligence rather than on the opposing

25  party to establish lack of diligence."). While the diligence component "does not require perfect

26  diligence" (*see Facebook, Inc. v. Blackberry Ltd.*, No. 18-cv-05434-JSW (JSC), 2020 U.S. Dist.

27  LEXIS 31377, at *14 (N.D. Cal. Feb. 13, 2020)), neither can it be said that the diligence

28  requirement is entirely nugatory or *pro forma*, as unlike the generally-applicable liberal policy for

amending pleadings, "the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *MLC Intellectual Prop.*, 2019 U.S. Dist. LEXIS 32411 at *5 (quoting *LG Electronics Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002). "Diligence consists of two steps: '(1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered.'" *Id*. at *5 (quoting *Monolithic Power Sys., Inc. v. Silergy Corp.*, No. 14-1745-VC (KAW), 2015 U.S. Dist. LEXIS 123825, 2015 WL 5440674, at *2 (N.D. Cal. Sept. 15, 2015)). In evaluating a party's showing of diligence, "the critical question is whether the party could have discovered the new information earlier had it acted with the requisite diligence." *Id*. (quoting *Radware*, 2014 U.S. Dist. LEXIS 103215, 2014 WL 3728482, at *1). If a moving party is unable to show diligence, then – quite obviously – there would be "no need to consider the question of prejudice." *Id*. at *6 (quoting *O2 Micro*, 467 F.3d at 1368). If, however, the court does find that the moving party acted with the requisite degree of diligence, the court must next determine whether the nonmoving party would suffer prejudice if the motion to amend were to be granted. *Id*. (citing *Apple Inc. v. Samsung Elecs. Co. Ltd.*, No. 12-0630-LHK (PSG), 2013 U.S. Dist. LEXIS 91450, 2013 WL 3246094, at *1 (N.D. Cal. June 26, 2013)). In this context, prejudice is typically found when amending infringement or invalidity contentions would disrupt the case schedule or other court orders. *Id*. (citing *Karl Storz Endoscopy-Am.*, 2016 U.S. Dist. LEXIS 176876, at *8).

## PLAINTIFF'S MOTION (DKT. 56)

### *Plaintiff's Original Infringement Contentions*

Plaintiff originally identified two categories of accused products: (1) pet carriers alleged to literally infringe, in which a mesh screen in the front panel opens upward and attaches above the front opening; and, (2) pet carriers that have been alleged to infringe under the doctrine of equivalents,[1] in which the mesh screen in the front panel opens downward and lies flat when fully

---

[1] *See e.g., Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) ("To temper unsparing logic and prevent an infringer from stealing the benefit of an invention a patentee may invoke this doctrine to proceed against the producer of a device if it performs substantially the same function in substantially the same way to obtain the same result.") (internal quotation marks and citations omitted); *see*

open. *See* Pl.'s Mot. (56) at 7. Regarding each of these categories, Plaintiff identified the product reference numbers used by Defendants, and / or the product names used by Defendants in their product listings on the website of Amazon, "to the extent permitted by Yuntek's independent investigation." *Id*. Regarding Plaintiff's allegations of willful infringement, the original infringement contentions only mentioned Plaintiff's 2018 communication with Defendants, because Yuntek "did not remember that it had also been contacted by Defendants' counsel about the '446 Patent in 2015" at the beginning of a year-long dispute with another party. *Id*.

*Plaintiff's Proposed Amendments*

Plaintiff seeks to effect amendments in three categories. As to the first category, where Plaintiff's original infringement contentions identified several of Defendants' products by their reference numbers, Plaintiff maintains that it made it clear that Defendants' products were being accused regardless of size, color, pattern, folding style, name, or other identifying information. *Id*. at 8. Through the discovery process, Plaintiff has reportedly learned of "other pet carrier products sold by Defendants," some of which "include the same essential features as the originally accused products, but with different reference numbers that seem merely to indicate different sizes, colors, or minor features." *Id*. at 8-9. Plaintiff seeks to amend its infringement contentions to expressly list these new reference numbers, as well as "other reference numbers for which Yuntek [still] needs additional information from Defendants [in order] to complete its infringement analysis [because] Yuntek [claims that it] has asked Defendants for that information several times, but Defendants have not provided it." *Id*. at 8. These reference numbers are not clearly listed or described in Plaintiff's Motion itself, instead, Plaintiff directs the undersigned to a redlined copy

---

*also Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42 (1929) ("[O]ne device is an infringement of another if it performs substantially the same function in substantially the same way to obtain the same result . . . the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape."); and, *Machine Co. v. Murphy*, 97 U.S. 120, 125 (1877) ("[I]n determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result.").

United States District Court
Northern District of California

of its proposed amendments to its infringement contentions that Plaintiff has attached as one of many exhibits to its Motion – Defendants' Response (dkt. 64), however, organizes this information in a manner that is clear and convenient to identify. *See* Defs.'s Opp. (dkt. 64) at 2, n.2, & 7.

As to the second category, Plaintiff also seeks to amend its infringement contentions such as to add a new set of willfulness allegations. *See* Pl.'s Mot. (dkt. 56) at 9-10. While Plaintiff's willfulness allegations were previously based on communications it had with Defendants in 2018 – during a recent settlement conference in this case, Defendants' counsel's mentioning of earlier communication between the Parties informed Plaintiff of the fact of certain communications between the parties in 2015, which Plaintiff admits that it "did not remember." *Id*. Specifically, in 2015, Plaintiff was embroiled in a similar patent dispute with a company called K&H Manufacturing; and, in the course of that dispute, Defendants communicated with Plaintiff in January and February of 2015, such as to inform Plaintiff that Defendants supplied K&H with the products in question. *Id*. at 9. However, "[p]rior to the settlement conference, Yuntek did not recall these communications and Yuntek's counsel was unaware of them." *Id*. As such, Plaintiff now seeks leave to amend its willful infringement allegations to include the 2015 communications, and well as supplementing its indirect infringement allegations with information related to K&H and its downstream customers. In this regard, the undersigned finds that no significant discussion is warranted in order to find that Plaintiff's lapse in memory is inconsistent with the requisite showing of diligence that is required in this context – Plaintiff's request to amend its willfulness allegations to include reference to the 2015 communications that it "did not recall" is **DENIED**.

As to the third category, the undersigned must first note that Plaintiff's motion is poorly drafted and lacks a clear statement about the exact substance of its proposed amendments as well as lacking a clear description of its showing of diligence; instead, Plaintiff appears to attempt to incorporate that information by reference to various materials peppered throughout the more than 400 pages it has attached to its motion. *See id*. at 10. However, the undersigned is not inclined to go fishing through Plaintiff's attachments and exhibits in order to cobble together the substance of arguments that should have appeared prominently in the body of its motion. Accordingly, while

United States District Court
Northern District of California

1    Plaintiff contends that it wishes to amend its original infringement contentions in order "to

2    supplement those allegations with information about proceedings that occurred [in this court] after

3    Yuntek served its original [i]nfringement [c]ontentions," Plaintiff's Motion (dkt. 56) does not

4    actually enumerate or describe that information, nor does the Motion itself make any appreciable

5    showing of diligence in this regard. *See id.* at 10. Instead, the Motion directs the reader to page 46

6    of a 50-page exhibit to a declaration which contains certain redline edits to what appears to be an

7    amended disclosure of infringement contentions labeled, "proposed version for purposes of meet-

8    and-confer discussion." *See* Exh-B (dkt. 56-5) at 7, 53. Also, where Plaintiff's infringement

9    contentions previously stated that it would later produce certain documents, Plaintiff now wishes

10   to amend those contentions to state that those documents have now been produced. *See* Pl.'s Mot.

11   (dkt. 56) at 10, n.2. Specifically, the amendments encompass: (1) a certified copy of the '446

12   Patent file's history (where previously an uncertified copy had been produced); (2) an agreement

13   between Plaintiff and another alleged infringer that was signed and produced after Plaintiff served

14   its initial infringement contentions and produced promptly thereafter; and, (3) another such

15   agreement between Plaintiff and an infringer from 2013, where "Yuntek only recently realized that

16   there was an earlier agreement with the same company." *Id*. Plaintiff's diligence showing as to

17   these items was given short shrift to say the least. *See id*.

18   *Defendants' Arguments in Opposition*

19        In essence, Defendants' oppose Plaintiff's proposed amendments on grounds that it has

20   failed to show the requisite diligence, and that allowing the amendment would be prejudicial

21   because: "[f]rom the outset, Yuntek only accused three products while demanding a ten percent

22   royalty . . . [inducing Defendants to] agree[] to Yuntek's [proposed] shorten[ing] [of the] case

23   schedule," which renders Plaintiff's proposed amendments prejudicial because "[t]his change in

24   scope would force [Defendants] to defend [themselves] against allegations within the constraints

25   of an accelerated schedule [that was] ordered when the case was smaller." *Id*. at 2-10. With respect

26   to amending infringement contentions to include additional products, Defendants have arranged a

27   chart identifying 9 products lines at issue: first, three of these product lines have been on sale at

28   Amazon for years, another three have not yet been made or sold by Defendants at all; second,

1    another two were first sold in April of 2021 (well after the institution of this lawsuit); and, lastly,

2    the Classy Go and Comfy Go products that were sold by K&H in 2015, about which Plaintiff

3    suffered a lapse in memory. *See id*. at 7.

4    *Discussion*

5        Because it was abundantly evident from the Parties' filings that their meet and conger

6    efforts had been perfunctory at best, the undersigned twice ordered the Parties to meet and confer

7    further in a good faith effort to narrow or resolve these disputes (*see* dkts. 76, 81). After the

8    second round, it remained apparent that the parties were still speaking past one another; one

9    example of which is evident in the Parties' dizzying inability to even be able to agree about the

10   most basic of foundations upon which to base their arguments. *Compare* Stipulation (dkt. 82) at 4

11   (wherein Plaintiff contends that "amendment of Yuntek's infringement contentions is technically

12   unnecessary" as to the Classy Go and Comfy Go products because they are the same as

13   Defendants' Model # DCC1039 which is already an accused product); *with id*. at 6 (wherein

14   Defendants contend that "[t]he Classy Go and Comfy Go products are not the #DCC1039 product

15   by [a] different name [and because] Defendants have not seen a claim chart or detailed explanation

16   for why Plaintiff has taken this position . . . [Defendants] cannot fully dispute it here."). This is a

17   textbook example of failure to take the meet and confer process seriously. Nevertheless, the

18   undersigned will accept Plaintiff's concession that "amendment of Yuntek's infringement

19   contentions is technically unnecessary" as to the Classy Go and Comfy Go products. While

20   Plaintiff contends that its original infringement contentions identified Model # DCC1039 as an

21   accused product regardless of names or other identifiers, it nevertheless asks that "it should be

22   allowed to make clear that these products are accused." *See id*. at 4. The undersigned disagrees.

23   Plaintiff cannot simultaneously contend that an amendment is both unnecessary and necessary.

24   Because Plaintiff has conceded that amending in this regard is "technically unnecessary," its

25   request to amend regarding the Classy Go and Comfy Go products is **DENIED.**

26       In similarly frustrating fashion, the Parties fail to argue in a cohesive and comprehensible

27   manner as to Plaintiff's request to amend its infringement contentions such as to include

28   Defendants' Model Nos. DCC10391, DCC1039023&4&5, DCC1039033&4&5, and

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1  DCC1047054&5. *See id.* at 4, 6. Plaintiff contends that additional discovery reveals that these

2  products "should be deemed within the scope of Yuntek's original infringement contentions

3  because they are essentially the same as Defendants' Model Nos. DCC1039 and DCC1047 (*id.* at

4  4); however, Defendants respond (*id.* at 6) that these "are not different names for products that

5  have already been accused – they are different products." Regrettably, this sort of disconnect is a

6  clear reflection of the fact that the Parties have treated their meet and confer requirements as a

7  mere formality which, in turn, has operated to waste judicial time and resources; and, despite

8  being ordered to further meet and confer on two subsequent occasions after they filed their

9  amendment motions, the Parties are still no closer to presenting an intelligible set of disputes. As

10  to Defendants' Model Nos. DCC1039023&4&5, DCC1039033&4&5, and DCC1047054&5 –

11  Defendants state that these products have "not yet been made or sold by Defendants." *See* Defs.

12  Opp. (dkt. 64) at 7. For that reason, as well as based on Plaintiff's statement that those three sets of

13  model numbers, as well as Model No. DCC10391, should be deemed to fall within the scope of

14  Plaintiff's original infringement contentions because Plaintiff thinks that they are substantially the

15  same as Model Nos. DCC1039 and DCC1047 which were originally accused, Plaintiff's request to

16  amend such as to expressly include these additional sets of model numbers is likewise **DENIED**.

17    As to Defendants' Model Nos. DCC1910 and DCC1811 (*see* Pl.'s Mot., Exh. A (dkt. 56-1)

18  at 5-6), Defendants contend that Plaintiff has failed to establish diligence as to these model

19  numbers because they have both been for sale and available on Amazon, respectively, since at

20  least February of 2016 and December of 2014. *See* Defs. Opp. (dkt. 64) at 7. Regarding Plaintiff's

21  effort to establish diligence as to these two model numbers in its Motion, Plaintiff only mentions

22  that "Defendants' product listings on www.amazon.com do not include Defendants' internal

23  reference numbers for the listed products [and as such] Yuntek has no way to identify those

24  reference numbers from the Amazon listings." *See* Pl.'s Mot. (dkt. 56) at 13-14. This generalized

25  argument in Plaintiff's Motion is unpersuasive, and, if Plaintiff had been diligent, it could have

26  identified these publicly available products otherwise – for example, by identifying them using

27  other points of reference such as a product name, a number assigned by Amazon, or some other

28  descriptor. However, it appears to the undersigned that Plaintiff held back the bulk of its diligence

United States District Court
Northern District of California

1    arguments in this regard such as to deploy them in its reply brief. *See* Pl.'s Reply (dkt. 68) at 7-9.

2    In its reply brief, for example, Plaintiff contends that Defendants' evidence that Model #DCC1910

3    was publicly available does not "clearly" show its infringing features. *Id*. Further, as to Model No.

4    DCC1811, Plaintiff simply criticizes Defendants' "effort to show Yuntek's lack of diligence." *Id.*

5    at 7. First, the undersigned will not consider Plaintiff's diligence arguments that appeared for the

6    first time in its reply brief.[2] Second, Plaintiff's arguments seems to be confused about the fact that

7    it is Plaintiff's burden to establish diligence through its original Motion; there is no burden on

8    Defendant to establish a lack of diligence. *See id*. at 8 (where Plaintiff contends that "[a]s there is

9    no evidence before the Court that information about Model #DCC1811 was publicly available

10   when Yuntek served its [i]nfringement [c]ontentions, or otherwise showing a lack of diligence by

11   Yuntek, Yuntek should be granted leave to add DCC1811 as an accused product."); *but see*

12   *Radware*, 2014 U.S. Dist. LEXIS 103215, 2014 WL 3728482, at *1 (N.D. Cal. July 28, 2014)

13   ("The burden is on the movant to establish diligence rather than on the opposing party to establish

14   lack of diligence."). Accordingly, Plaintiff's request to amend its contentions to include

15   Defendants' Model Nos. DCC1910 and DCC1811 is **DENIED**.

16         This problem is compounded in relation to Plaintiff's request to amend such as to include

17   Model No. DCC2611 because: (a) Plaintiff has failed to demonstrate diligence in seeking to

18   amend to include this information; (b) Plaintiff relies on a conflating of the relevant burdens in

19   claiming that "Defendants have not shown that Model #DCC2611 was available to Yuntek earlier

20   in this litigation" (*see* Pl.'s Reply (dkt. 68) at 9-10); and, (c) because of Yuntek's statement that it

21

22   [2] *See generally Filarsky v. Life Ins. Co. of N. Am. "lina,"* 391 F. Supp. 3d 928, 946 n.28 (N.D. Cal. 2019)
     ("The Court declines to consider Dr. Filarsky's "surcharge" argument, as it was raised for the first time in
23   his reply brief."); *DeSoto Cab Co. v. Uber Techs., Inc.*, No. 16-cv-06385-JSW, 2018 U.S. Dist. LEXIS
     226261, at *40 (N.D. Cal. Sep. 24, 2018) ("The Court declines to address Uber's standing argument,
24   because it was raised for the first time in Uber's reply brief."); *Groupion, LLC v. Groupon, Inc.*, No. C 11-
     00870 JSW, 2012 U.S. Dist. LEXIS 102905, at *10 n.3 (N.D. Cal. July 23, 2012) ("Because Groupion
25   waited and asserted this argument, and supporting evidence, for the first time in its reply brief, the Court
     strikes it."); *Data Mark v. Brain Tunnelgenix Techs. Corp.*, No. C 10-04958 JSW, 2011 U.S. Dist. LEXIS
26   170541, at *20 n.5 (N.D. Cal. Aug. 12, 2011) ("In their reply brief, the Titronics Defendants argue for the
     first time that Plaintiffs' conversion claim against them fails for the additional reason that reverse-
27   engineering is legal when it concerns a product that is not protected by a patent. Because this argument was
     raised for the first time in the reply brief, the Court will not consider it."); and, *In re Chen*, No. C 10-00146
28   JSW, 2010 U.S. Dist. LEXIS 104990, at *10 (N.D. Cal. Sep. 20, 2010) (finding that a bankruptcy court did
     not err in by refusing to consider a latches argument raised for the first time in a reply brief).

"seeks to amend its [i]nfringement [c]ontentions to add a reference to Defendants' Model #DCC2611 – not as an accused product but as a product that is under investigation for infringement." *Id*. In this regard, Plaintiff submits that it has "repeatedly asked Defendants to provide additional information to allow Yuntek to complete its infringement investigation, but Defendants have not done so." *Id*. at 9 n.6. Because Plaintiff has failed to move to compel this information, and because Plaintiff essentially seeks to improperly use a motion to amend its invalidity contentions as a surrogate for a motion to compel discovery, Plaintiff's request to amend its contentions to include Model DCC2611 "as a product that is under investigation" is **DENIED**.

Lastly, Plaintiff seeks to amend its contentions such as to include references to certain products that it "is investigating [for] possible infringement of one or more claims of the '446 Patent," namely Defendants' Model Nos. DCC001810, DCC002611, DHCA012033LN, and DHCA012033N1. *See* Pl.'s Mot., Exh. A (dkt. 56-1) at 6. While Plaintiff's principal Motion does not make any substantial reference to any diligence efforts relating to these model numbers, Plaintiff's reply brief simply contends that "Defendants do not say how Yuntek could have been expected to learn about these products using ordinary diligence absent discovery from Defendants [thus] Yuntek should be found to have exercised diligence related to these products." *See* Pl.'s Reply (dkt. 68) at 6. First, putting aside questions about the deficiency of Plaintiff's diligence showing in this regard, future investigations for possible infringement are not an acceptable reason for amending infringement contentions *now*, and Plaintiff's request to do so should be denied for that reason alone. Second, Plaintiff's failure to establish diligence is highlighted by its effort to once again saddle Defendants with the non-existent burden of disproving diligence. Third, Defendants point out that Model Nos. DHCA012033LN and DHCA012033N1 were first sold in April of 2021, five months *after* Plaintiff filed its Complaint in this case. Def.'s Opp. (dkt. 64) at 8. Defendants add that the proper procedure would be for Plaintiff to seek leave to file a supplemental complaint in order to add accused products that were released after the filing of the complaint. *Id*. (citing *Rembrandt Patent Innovations, LLC v. Apple Inc.*, No. C 14-05094 WHA, 2015 WL 8607390 at *2 (N.D. Cal. Dec. 13, 2015)). Plaintiff replies to the effect that "Yuntek asks that the present motion [to amend infringement contentions] be construed as a motion for

11

1   leave to file a supplemental complaint as to these products and that Yuntek be granted such leave."

2   Pl.'s Reply (dkt. 68) at 6 n.5. First, the undersigned is not empowered to grant Plaintiff the leave it

3   seeks, and even if the undersigned was vested with such authority, the undersigned would not be

4   inclined to accept such an invitation because a passing reference in a footnote in a reply brief in an

5   unrelated matter is not a suitable surrogate for a properly noticed and briefed motion. For all of

6   these reasons, Plaintiff's request to amend its contentions such as to include references to

7   Defendants' Model Nos. DCC001810, DCC002611, DHCA012033LN, and DHCA012033N1 is

8   likewise **DENIED**.

9                          **DEFENDANTS' MOTION (dkt. 58)**

10          On the same day that Plaintiff moved to amend its infringement contentions, Defendants

11  similarly moved to amend their invalidity contentions. *See* Defs.' Mot. (dkt. 58) at 2. Due to

12  Plaintiff's shifting use of the term "front opening," Defendants sought to amend their invalidity

13  contentions to include certain references to three other patents that they contend would

14  demonstrate that the technology demonstrated in Plaintiff's '446 patent would have been obvious

15  to someone skilled in the art. *See id.* at 2-3 ("In light of the heightened significance that Yuntek

16  has placed on this term, Defendants reviewed the prior art that [they] had disclosed in [their]

17  original invalidity contentions, specifically evaluating references to supplement their contentions

18  to address the scope of Yuntek's newly proposed construction [of the term "front opening,"] [and]

19  [a]fter conducting this analysis, Defendants promptly notified Yuntek of [their] intent to amend

20  [their] invalidity contentions."). Thereafter, Plaintiff responded in opposition (dkt. 67), and

21  Defendants replied (dkt. 69); Defendants also moved to strike (dkt. 75) Plaintiff's changed use of

22  the claim construction term "front opening."

23          Upon being ordered (dkt. 76) to meet and confer further in order to narrow or resolve these

24  disputes, the Parties arrived at an agreement to the effect that "[t]he term 'front opening' in

25  asserted claims 6, 7, 41, and 54 of the '446 Patent shall be given its plain and ordinary meaning."

26  *See* Order on Stipulation (dkt. 83). Consequently, Plaintiff argued that this change rendered

27  Defendants' motion to amend its contentions moot due to the fact that "Defendants' entire motion

28  was predicated on the purported need to address Yuntek's proposed construction of 'front

United States District Court
Northern District of California

1  opening' in the asserted independent claims of Yuntek's '446 Patent." *See* Plaintiff's Further

2  Remarks (dkt. 82) at 3. Defendants respond that "[g]iven the commotion surrounding the

3  construction of this term, and the substantial resources Defendants have spent to respond to

4  Plaintiff's multiple changing positions, Defendants argue that [it] is reasonable to permit a modest

5  amendment directed to that term." *See* Defendants' Further Remarks (dkt. 82) at 5. More

6  specifically, "Defendants submit that if Plaintiff's reference to different products in their original

7  contentions justifies an amendment to bring in allegedly similar products, then Defendants'

8  mention and production of the [references to three other patents] should likewise justify

9  amendment of their invalidity contentions." *Id.* at 6.

10      The undersigned finds that, in light of the above, no further amendments to Defendants'

11  contentions are justified under the circumstances. First, the undersigned has denied all of

12  Plaintiff's requests to amend its infringement contentions, so Defendants' reliance on a "what's

13  good for the goose is good for the gander" approach is undermined. More importantly though, as

14  Plaintiff suggests, the Parties' subsequent agreement to limit "front opening" to "its plain and

15  ordinary meaning" has essentially eviscerated all of the reasoning that Defendants advanced for

16  needing to amend their invalidity contentions in the first place. All that remains now is

17  Defendants' assertion that some measure of "commotion" and the hassle of dealing with Plaintiff's

18  previously-shifting use of the term somehow still justifies an amendment. The undersigned is

19  unpersuaded. As mentioned above, this Court's patent rules require parties to provide early notice

20  of their infringement and invalidity contentions, and to proceed with diligence in amending those

21  contentions, such as to balance a party's ability to develop new information in discovery with the

22  overarching need for certainty as to the legal theories involved in the case. See *MLC Intellectual*

23  *Prop., LLC*, 2019 U.S. Dist. LEXIS 32411, at *4. For these reasons, Defendants' Motion to

24  Amend (dkt. 58) their invalidity contentions is **DENIED**.

25  //

26  //

27  //

28  //

13

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

In short, for all the reasons stated herein, and because the Parties' arguments regarding their diligence and their actual need for proposed amendments did not establish good cause, the undersigned believes that the considerations relating to the Parties' right to develop new information and theories through discovery, and the need for certainty as to the theories involved in the case, have now tipped the balance to favor certainty and constancy of the legal theories at play. Accordingly, both Parties' motions to amend (dkts. 56 & 58) are **DENIED** in their entirety.

**IT IS SO ORDERED.**

Dated: October 26, 2021

_____
ROBERT M. ILLMAN
United States Magistrate Judge