**EXHIBIT C**

Jen-Feng Lee, SBN 204328
jflee@ltpacificlaw.com
Kenneth K. Tanji, Jr., SBN 162273
ktanji@ltpacificlaw.com
**LT PACIFIC LAW GROUP, LLP**
17800 Castleton Street, #560
City of Industry, CA 91748
T: 626-810-7200
F: 626-810-7300

Robert E. Aycock (Admitted *pro hac vice*)
robert@kimballanderson.com
William B. Chadwick (Admitted *pro hac vice*)
will@kimballanderson.com
**KIMBALL ANDERSON**
649 E. South Temple, 2nd Floor
Salt Lake City, UT 84102
T: 801-359-3333
F: 801-326-4526

Attorneys for Defendants
XIAMEN JXD ELECTRONIC COMMERCE CO. LTD.,
XIAMEN SUNNYPET PRODUCTS CO. LTD., and
PETSFIT INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| YUNTEK INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> XIAMEN JXD ELECTRONIC COMMERCE CO., LTD., XIAMEN SUNNYPET PRODUCTS CO., LTD., and PETSFIT INC., <br><br> Defendants. | Case No. 4:20-cv-07201-JSW <br><br> **DEFENDANTS' FIRST AMENDED RESPONSIVE DAMAGES CONTENTIONS PURSUANT TO PATENT L.R. 3-9** <br><br> Judge: Hon. Jeffrey S. White <br> Magistrate: Hon. Robert M. Illman |

Pursuant to Patent L.R. 3-9, Defendants Xiamen Jxd Electronic Commerce Co., Ltd., Xiamen Sunnypet Products Co., Ltd., and Petsfit (collectively, "Defendants") provide the following First Supplemental Responsive Damages Contentions. Defendants make these contentions for purposes of this action only. Defendants' investigation in this matter is ongoing, discovery has not closed, claim construction has not yet occurred Yuntek has not submitted its damages expert report, Defendants have not taken discovery from Yuntek's damages expert, and it is not yet time for Defendants to present a full damages expert report. Defendants note that the Rule 30(b)(6) deposition Plaintiff Yuntek International, Inc. and the personal deposition of Yuntek's owner (David Chou) have not yet occured. Accordingly, Defendants make this contentions based on information that they currently have in their possession, custody, or control, the current status of the case, and their good faith beliefs about the scope of the asserted patent claims without prejudice to Defendants' right to supplement or amend these contentions to the extent permitted by applicable law.

Defendants contend that the '446 Patent is not valid. *See Defendants' First Amended Answer and Counterclaims to First Amended Complaint* (Dkt. 41); *Defendant Petsfit Inc.'s Answer and Counterclaims to Second Amended Complaint* (Dkt. 55); *Defendants' Invalidity Contentions* (Dkt. 58); *Defendants' Proposed Invalidity Contentions* (Dkt. 58-1). Even if the '446 Patent is found to be valid, Defendants contend that the Accused Products do not infringe the patent. If the '446 Patent is found to be valid and infringed, patent law instructs that Yuntek is entitled to an award adequate to compensate for the infringement but not less than a reasonable royalty. 35 U.S.C. § 284. Yuntek does not seek lost profits, price erosion, convoyed or collateral sales, or any other form of damages except a reasonable royalty and enhanced damages pursuant to 35 U.S.C. § 284 and attorney fees pursuant to 35 U.S.C. § 285.

Governing law holds that a reasonable royalty is determined based on a hypothetical negotiation between a willing licensor and willing licensee at the time of first infringement, with both parties hypothetically accepting that the asserted patent is valid and infringed. Sunnypet contends that the parties would have agreed upon a running royalty calculated as a percentage of Defendants' revenues from U.S. sales of the accused products. Defendants dispute that the value of unsold

inventory imported into the United States should be included in the royalty base, especially because Yuntek does not seek lost profits, price erosion, convoyed or collateral sales, or any other form of damages outside of enhanced willfulness damages and attorney fees. Defendants intend to take discovery on Yuntek's alleged practices of basing royalties on unsold inventory and the alleged harm to Doskocil caused by unsold, imported inventory. A royalty based on a percentage of the value of unsold inventory runs a high chance of doubling the license fee on that inventory if it is subsequently sold.

### I. Time Period for Royalty

Based on information currently known, Defendants contend that the hypothetical negotiation would have been held in approximately May 2014. However, that hypothetical date falls outside the statute of limitations for patent infringement so not all sales after that date would be included in a royalty. Dkt. 1. Yuntek's proposed date (May 2014) is before the first alleged infringement because it falls outside the statute of limitations for patent infringement.

Defendants contend that damages—if any—are limited to the time after which Yuntek provided appropriate notice to Defendants under 35 U.S.C. § 287. Defendants contend that there was not appropriate marking or notice as of October 2014 and, as such, Yuntek is not entitled to damages until later, in no event later than October 2020 when the complaint was filed. Defendants intend to seek further discovery and investigation into if and when Yuntek and its licensees provided adequate notice. Defendants reserve the right to assert a different date for the hypothetical negotiation based on new information learned.

### II. Royalty Base

#### a. <u>Accused Products Listed in Yuntek's Original Infringement Contentions</u>

Defendants reserve the right to correct or supplement their records of sales of the accused products as they learn more information through discovery and independent investigation. Defendants note that the revenue figures in Yuntek's Damages Contentions include sales from outside the statute of limitations and before there was adequate marking and notice. The royalty base should be limited accordingly. At the most, Yuntek is limited to damages for sales made on or after October 15, 2014, which is six years before Yuntek filed the Complaint.

b. <u>Accused Products from Proposed Amended Infringement Contentions</u>

Yuntek's Damages Contentions claim damages for products that are not included in its infringement contentions. These additional products include Petsfit model numbers DCC10391, 1039023&4&5, DCC1039033&4&5, DCC1910, and DCC1047054&5, and K&H Manufacturing's Classy Go and Comfy Go products.

Defendants dispute that these products infringe and oppose Yuntek's efforts to add them into the infringement contentions. *See* Dkt. 64. The Magistrate Judge has denied Yuntek's motion to amend its infringement contentions to add these products. *See* Dkt. 85. Defendants reserve the right to supplement these contentions to address those products should Yuntek be granted leave to amend its infringement contentions to include these additional products.

### III. Reasonable Royalty Rate

To determine an appropriate reasonable royalty in a patent infringement case, courts often look at the 15 factors established in *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 166 U.S.P.Q. (S.D.N.Y 1970). To determine a reasonable royalty rate, Defendants' expert report on damages will rely at least upon the pertinent *Georgia-Pacific* factors and any other factors that may be relevant to the specific facts of this case.

**(1) The royalties received by the patent owner for the licensing of the patent-in-suit, providing or tending to prove an established royalty:**

Defendants will seek additional discovery and investigation into the terms and context of the licenses Yuntek has produced or will produce granting rights to the '446 Patent. *See also* Factor #3. Several of the produced licenses indicate a lump sum and not an established royalty rate of 10%. At least one license shows a royalty less than 10% for rights in the '446 Patent. Yuntek has not yet produced its license with Doskocil for Defendants to analyze and there are serious concerns about the existence, validity, legitimacy, and terms of that alleged license.

**(2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit:**

Defendants are not aware of licenses applicable to this factor. While not directly enumerated in this factor, Defendants intend to pursue discovery and investigation into rates paid by Yuntek's licensees for use of patents similar to the '446 Patent.

**(3) The nature and scope of the license, as exclusive non-exclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold:**

Defendants will seek additional discovery and investigation into the terms and context of the licenses Yuntek has produced and the ones it has not produced yet. This includes whether the license was entered into under the threat and pressures of litigation (including litigation costs), whether the license was entered into under the understanding that Yuntek had a 10% royalty agreement with Doskocil, whether the license was entered into under the understanding that Yuntek was a competing manufacturer, whether that litigation included a claim for Yuntek's lost profits, and the underlying accused products under the respective licenses. Yuntek has not yet produced its license with Doskocil and there are serious concerns about the existence, validity, legitimacy, and terms of that alleged license.

**(4) The licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting license under special conditions designed to preserve that monopoly:**

Defendants intend to pursue discovery into Yuntek's licensing history and policy.

**(5) The commercial relationship between the licensor and the licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter:**

Defendants' products compete in the United States with products sold under the '446 Patent. Defendants intend to seek discovery and investigation into whether Yuntek makes, offers, or sells patented products in the United States (or if it plans to do so) and Yuntek's role in the sales made by its licensees to determine the commercial relationship between the parties. Yuntek has alleged that it does in other litigation and in this litigation (Dkt. 1 at ¶ 10). However, Yuntek has backtracked on those assertions.

**(6) The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its nonpatented items; and the extent of such derivative or convoyed sales:**

Defendants will seek discovery from Yuntek on this factor, but Yuntek is not seeking damages associated with convoyed or collateral sales. Defendants are not aware of derivative or convoyed sales attributed to the patented technology and Yuntek is not seeking recovery for convoyed sales.

**(7) The duration of the patent and the term of the license:**

At the time of the hypothetical negotiation, the '446 Patent had approximately eight years left in its term. Defendants will seek information through discovery and investigation into the pricing of comparable technology or non-infringing alternatives available to Defendants at the time of the hypothetical negotiation to evaluate whether it would have continued to sell the accused products and at what volume. The presence of commercially viable alternatives would support a lower royalty rate and could indicate the value of the patented technology or amount of the royalty based on the costs required to design the acceptable alternatives.

**(8) The established profitability of the product made under the patent; its commercial success; and its current popularity:**

Defendants intend to discover the revenue and profitability of patented and non-patented products sold by Yuntek and its licensees, including changes in those metrics over time. Defendants will also perform internal calculations regarding their revenue and profitability of the accused products. Subject to forthcoming expert reports, Defendants submit that their gross profit margin on the accused products is less than 10.0%.

**(9) The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.**

The technology disclosed in the '446 Patent would have been obvious to someone of ordinary skill in the art for many years. *See Defendants' Invalidity Contentions* (Dkt. 58); *Defendants' Proposed Invalidity Contentions* (Dkt. 58-1). Its utility and advantages over existing options are minimal at best, and there are and have been many commercial alternatives to the patented technology. Moreover, analysis under this factor depends on the outcome of claim construction of the '446 Patent. Some interpretations of the patent open the door for no- or low-cost non-infringing alternatives that provide the same if not more utility and commercial appeal.

**(10) The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention:**

*See* (3), (4), (5), and (9) above.

**(11) The extent to which the infringer has made use of the invention, and any evidence probative of the value of that use:**

Defendants have sold pet carriers for years that would have had commercial demand even without the alleged use of the patented technology. There were also numerous commercially acceptable design around alternatives at the time of the hypothetical negotiation. Moreover, Defendants' products contain numerous features and capabilities beyond the scope of the '446 Patent which further drive the demand for their products.

**(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions:**

Defendants intend to pursue information about this factor through discovery and independent inquiry.

**(13) The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer:**

*See* Factor #11. Defendants will seek information through investigation and discovery regarding the value of the smallest salable patent practicing unit and otherwise apportioning the revenue and profit of their products to only the patented features. Defendants also intend to seek further discovery regarding the profits of Yuntek and its licensees for patented and non-patented products.

**(14) The opinion testimony of qualified experts:**

Defendants intend to present testimony from one or more qualified experts to support its damages position. It is anticipated that the expert report will discuss at least the relevant *Georgia-Pacific* factors and any other factors that, under the specific facts of this case, may be relevant to the determination of a reasonable royalty rate that will adequately compensate Yuntek for Defendants' alleged infringement of the '446 Patent. Defendants also intend to present testimony from one or more qualified experts to support its position regarding no-cost or low-cost noninfringing design alternatives with no or limited changes to consumer demand. Defendants also reserve the right to take discovery from Yuntek's damages and technical expert, and Defendants anticipate relying on expert testimony to rebut Yuntek's expert testimony.

**(15) The amount that a licensor (such as the patent owner) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount that a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit, and which amount would have been acceptable by a prudent patent owner who was willing to grant a license:**

Defendants have not yet determined the amount of a reasonable royalty that will adequately compensate Yuntek for Defendants' alleged infringement of the '446 Patent. Discovery is not closed and Defendants have not yet taken the Rule 30(b)(6) deposition of Yuntek or the deposition of Yuntek's owner, Mr. Chou. Defendants also have not received the opening report from Yuntek's damages expert or taken expert discovery. Moreover, it is not yet time for Defendant's expert report regarding damages under the Patent Local Rules. Finally, the Court has not yet issued a claim construction order clarifying the scope of the patent.

Based on the information available to it at this time and in consideration of the factors above, Sunnypet submits that a royalty rate lower than 10% is adequate to compensate Yuntek for Defendant's alleged infringement of the '446 Patent. Subject to the outstanding fact discovery, claim construction, expert reports, and expert discovery, Sunnypet asserts that a reasonable royalty is likely to be in the 1%-5% range. In particular, the existence of no-cost or low-cost design alternatives with limited or no impact on consumer demand indicate the limited value of the patent and a low royalty rate. Additionally, Defendants' limited profit margin on sales of the accused products would have likely resulted in a hypothetical royalty rate less than 10%.

### IV. Willful Infringement (35 U.S.C. § 284)

Defendants contend that they have not infringed the '446 Patent, let alone willfully infringed the patent. As such, Defendants dispute Yuntek's claim for enhanced damages under 35 U.S.C. § 284 for reasons including its own good-faith, reasonable belief of noninfringement and Yuntek's multi-year silence regarding its infringement allegations after Defendants presented a noninfringement position. *See Opposition to Plaintiff's Motion for Leave to Amend its Infringement Contentions* (Dkt. 64). Defendants will seek further discovery regarding Yuntek's position that Defendants willfully infringed the asserted patent.

## V. Attorney Fees (35 U.S.C. § 385)

Defendants oppose Yuntek's claim that this case is exceptional or that it is entitled to recover its attorney fees. Defendants have vigorously and diligently defended themselves against infringement claims through standard pleading, motion, and discovery practice. Defendants have presented reasoned, good-faith arguments and have not unnecessarily driven up costs for the parties. Even before substantive litigation was underway, Yuntek has stated that it would claim its fees. Finally, "attorney's fees are not 'damages.'" *Motorola, Inc. v. Federal Exp. Corp.*, 308 F.3d 995, 1008, n.13 (9th Cir. 2002).

## VI. Additional Information

In addition to the information identified above, Defendants intend to seek the following categories of potential evidence to further form their damages position:

- Deposition testimony from Yuntek's Rule 30(b)(6) designee;
- Deposition testimony from Mr. Chou, the inventor of the '446 Patent, and Yuntek's owner;
- Publicly available information regarding the patented product, accused products, and pet carrier industry;
- Publicly available information regarding the litigation surrounding the licenses to the '446 Patent;
- Technical expert opinions on topics including acceptable design around alternatives and the associated costs;
- Discovery from Yuntek's damages expert regarding Yuntek's position on a reasonable royalty;
- Information and documents from Yuntek regarding financial, business, marketing, licensing and technical information; and
- Information and documents from third parties regarding the terms of their licenses to the '446 Patent and the context surrounding the negotiation and subsequent performance of the licenses.

Dated: December 22, 2021

KIMBALL ANDERSON

*/s/ Robert E. Aycock*
Robert E. Aycock
William B. Chadwick

LT PACIFIC LAW GROUP, LLP
Jen-Feng Lee

Attorneys for Defendants XIAMEN JXD ELECTRONIC COMMERCE CO., LTD., XIAMEN SUNNYPET PRODUCTS CO., LTD., and PETSFIT INC.