UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUNTEK INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> XIAMEN JXD ELECTRONIC COMMERCE CO., LTD., et al., <br><br> Defendants. | Case No. 20-cv-07201-JSW <br><br> **CLAIMS CONSTRUCTION ORDER** |

The Court has been presented with a technology tutorial and briefing leading up to a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). This Order construes the disputed claim terms selected by the parties, which appear in the patent at issue in this case, United States Patent No. 6,715,446 ("the '446 Patent"), entitled "Pet Tent."

## BACKGROUND

The '446 Patent generally describes a collapsible tent for housing a pet which folds into a storage bag was not in use. ('446 Patent at Abstract.) The design and structure includes a main body as well as front and back panels connected to the body and forming a dome shape. (*Id.*)

The parties dispute the meaning of five claim terms.

## ANALYSIS

**A.    Legal Standard.**

Claim construction is a question of law for the Court. *Markman,* 517 U.S. at 384. "The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). The Court has an obligation "to ensure that questions of the scope of the patent claims are not left to the jury." *Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378, 1383

(Fed. Cir. 2009) (quotation omitted).  Accordingly, the Court must ensure that the parties' disputes are "fully resolved" and assign "a fixed, unambiguous, legally operative meaning to the claim." *Id*.

Claim terms are generally given "their ordinary and customary meaning"—*i.e.*, "the meaning that the terms would have to a person of ordinary skill in the art at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).  There are only two exceptions to this rule: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

In determining the ordinary and customary meaning, the claim language "provide[s] substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314.  However, a person of ordinary skill in the art is "deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*. at 1313.  The scope of the claims must always be "determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Soceta' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).  The construction that "stays true to the claim language and most naturally aligns with the patent's description of the invention" governs. *Id.*  Accordingly, the specification "is always highly relevant to the claim construction analysis" and usually "dispositive." *Id*. at 1315.

In addition to the claims and the specification, the prosecution history may be used "to provide[] evidence of how the PTO and the inventor understood the patent." *Id*. at 1317.  "Any explanation, elaboration, or qualification presented by the inventor during patent examination is relevant, for the role of claim construction is to 'capture the scope of the actual invention' that is disclosed, described and patented." *Fenner Inv., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015).  The claims, specification, and prosecution history together constitute the "intrinsic evidence" that forms the primary basis for claim construction.  *Phillips*, 415 F.3d at 1312-17

2

1  (citation omitted).  Courts may also consider extrinsic evidence, such as technical dictionaries and
2  expert testimony, "if the court deems it helpful in determining the 'true meaning of language used
3  in the patent claims'" and it does not contradict the intrinsic evidence.  *Id*. at 1318 (quoting
4  *Markman*, 52 F.3d at 980).

**B.    Claim Construction.**

    **1.    Claim Term: "foldable"**

Yuntek proposes the construction of the term "foldable" to mean "having structural features that facilitate folding in the manner described."  Defendants propose the construction of the term to have its plain and ordinary meaning.

There is a "'heavy presumption' that a claim term carries its ordinary and customary meaning."  *CCS Fitness, Inc. v. Brunswick, Corp.*, 288 F.3d 1359, 1366 (9th Cir. 2002) (citation omitted).  The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  *Phillips*, 415 F.3d at 1312-13.  In addition, the "foldable" requirement in the context of the patent is already modified and defined by restrictions in each asserted claim.  *See ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (9th Cir. 2003) (holding that the "context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms.").  The Court finds that it would be improper to adopt Yuntek's proposed construction to incorporate additional limitations existent in the various restrictions of the limiting language of the claims.

The Court adopts the plain and ordinary meaning of the term and construes "foldable" to mean "able to be folded."

    **2.    Claim Term: "on top of said bottom side [of said main body]"**

Yuntek proposes the construction of the term "on top of said bottom side [of said main body]" to mean "above and directly adjacent to the bottom side of the main body."  Defendants propose the construction of the term to mean "onto the interior floor of the housing, and on top of any mat or pad on the interior floor of the housing."

The Court does not agree that the suggested optional feature, such as a pad, that is

removeable from the product should be included in the claim construction. The Court also finds the term "adjacent" in this context to be unnecessarily ambiguous and confusing.

The Court construes the term "on top of said bottom side [of said main body]" to mean "directly onto the interior floor of the main body."

### 3. Claim Term: "front panel and back panel are *folded over* the collapsed main body with one of the front panel and the back panel *folded over* the other"

Yuntek proposes the construction of the term "front panel and back panel are *folded over* the collapsed main body with one of the front panel and the back panel *folded over* the other" to mean "'folded over' means bent or pivoted to a position above the collapsed main body and at least partly overlapping the other panel." Defendants propose the construction of the term to mean "front panel and back panel folded toward and over each other over the top side of the collapsed main body such that the housing is folded to and remains in a significantly compact state."

The crux of the dispute is in the term "folded over" which the Court construes to mean "bent toward" and the examination history clearly indicates that the compact form of the folded product was necessary to distinguish it from prior art. *See Phillips*, 415 F.3d at 1317 ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the court of prosecution, making the claim scope narrower than it would otherwise be.").

The Court construes the disputed phrase to mean "front panel and back panel are bent toward each other so that one overlaps the other in a compact position above the collapsed main body."

### 4. Claim Term: "a continuous structure"

Yuntek proposes the construction of the term "a continuous structure" to mean "a structure in which the four sides are connected (such as by sewing) without being disengageable (such as by a zipper) across the structure's entire length at any location." Defendants propose the construction of the term to have its plain and ordinary meaning.

The Court finds Yuntek's proposal to modify the term by adding the phrases "such as by sewing" or "such as by a zipper" lacks explanation and are improper incorporation of preferred

4

embodiments. The Court also finds that the proposed addition of the phrase "four sides" may create confusion and indicate the structure has included four distinct sides when the structure can be a dome shape.

The Court construes the term "a continuous structure" to mean "a structure in which all sides of the main body are connected without being fully disengageable."

### 5. Claim Term: "wherein said housing is foldable such that"

Yuntek proposes the construction of the term "wherein said housing is foldable such that" to mean, for Claim 6, "wherein the housing is foldable in the manner stated in column 1, lines 39-47 of the Inter Partes Reexamination Certificate." And for Claim 7, Yuntek proposed the term to mean "wherein the housing is foldable in the manner stated in column 2, lines 13-21 of the Inter Partes Reexamination Certificate." Defendants propose the construction of the term to have its plain and ordinary meaning.

The Court finds that the phrase "wherein said housing is foldable such that" includes the term "such that" indicating that the three limitations which follow describe the manner in which the housing is "foldable" rather than reciting how the pet housing must actually be folded. The Court finds persuasive that the term "such that" means "in such a way that" and then includes the three limitations which follow. The reexamination interpretation supports this understanding when the examiner found the cited reference to be invalidating where it disclosed front and back panels that "are capable of being folded onto the collapsed main body." This interpretation is also consistent with the Court's construction of the separate term "foldable" meaning able to be folded.

## C.   Case Management.

The Court HEREBY SETS a case management conference for July 22, 2022, at 11:00 a.m. The parties shall submit their joint case management conference statement by no later than July 15, 2022.

**IT IS SO ORDERED.**

Dated: June 6, 2022

_____
JEFFREY S. WHITE
United States District Judge

5